Argued and submitted April 13, 2015, reversed and remanded
September 28, 2016

Henry LIU,
*Petitioner,*

*v.*

PORTLAND STATE UNIVERSITY,
*Respondent.*

Agency/Board/Other
A152675

383 P3d 294

Michael Rose argued the cause and filed the brief for petitioner.

C. Robert Steringer argued the cause for respondent. With him on the brief were James E. Mountain, Jr., Brett Applegate, Harrang Long Gary Rudnick P.C., and P. K. Runkles-Pearson, Assistant General Counsel, Portland State University.

Before Armstrong, Presiding Judge, and Egan, Judge, and Shorr, Judge.*

_____

* Shorr, J., *vice* Nakamoto, J. pro tempore.

## ARMSTRONG, P. J.

Petitioner was expelled from Portland State University for violating the school's Student Code of Conduct and Responsibility (Student Conduct Code). *See former* OAR 577-031-0125 to 577-031-0148 (Sept 28, 2009).[1] He seeks judicial review of the order that expelled him, contending that the expulsion proceedings were legally deficient. Specifically, petitioner contends that, under *former* ORS 351.088 (2011), *repealed by* Or Laws 2015, ch 767, § 4,[2] PSU was required to use procedures consistent with those provided in Oregon's Administrative Procedures Act (APA) for contested cases, that is, procedures consistent with those specified in ORS 183.413 to 183.470, and that PSU's Student Conduct Code hearing procedures fell short in several respects in meeting that requirement. PSU responds that *former* ORS 351.088 did not require it to conduct its Student Conduct Code hearings consistently with the APA, but, even if it did, the procedures used to expel petitioner satisfied that requirement. PSU also continues to maintain its argument—made initially in a motion to dismiss petitioner's petition for judicial review—that we lack jurisdiction to review the expulsion order because the proceeding below was not a contested case under the APA and, therefore, there is no statutory basis for appellate jurisdiction.[3] We conclude that we have jurisdiction under ORS 183.482 to review the case. On the merits,

---

[1] OAR chapter 577 rules were removed from the OAR compilation effective July 1, 2015, due to the enactment of Senate Bill 270 in 2013. *See* Or Laws 2013, ch 768, § 16(3) (providing, in part that, "[e]xcept as otherwise provided by law, the provisions of * * * ORS chapters * * * 183 * * * do not apply to a university with a governing board"); *id.* § 3(1)(b) (establishing a governing board for PSU). Accordingly, we cite to those rules in this opinion as former rules.

[2] *Former* ORS 351.088 (2011), which was repealed in 2015, provided:

"Notwithstanding ORS chapter 183, the State Board of Higher Education or any public university listed in ORS 352.002 may, by rule, establish adjudicative procedures that are consistent with federal and state constitutional requirements and other provisions of law. The adjudicative procedures shall be consistent with ORS 183.413 to 183.497 and 183.502 whenever the type of hearing or procedure is substantially of the character that would necessitate the procedures required by ORS 183.413 to 183.470."

For convenience, we refer to the statute in the remainder of this opinion simply as *former* ORS 351.088.

[3] The Appellate Commissioner denied PSU's motion to dismiss. PSU sought reconsideration of the Commissioner's decision, which was denied by the Chief Judge. PSU then petitioned for Supreme Court review, which the court denied.

we conclude that PSU was required to comply with the APA in expelling petitioner, and PSU failed to do that; accordingly, we reverse and remand the expulsion order.

The pertinent facts are procedural and undisputed. Petitioner received formal notice from PSU on June 1, 2012, charging him with two violations of the Student Conduct Code. The notice identified the violations as

"Possible Health/Safety Threat: [*Former* OAR] 577-031-0136(5) Behavior that constitutes a possible threat to the health or safety of self or others.

"Furnishing False/Misleading Information: [*Former* OAR] 577-031-0136(3) Furnishing false or misleading information to the University, including but not limited to knowingly failing to provide required information to the University or misrepresenting a person's identity to a Course Instructor or University Official."

(Underscoring in original.) The notice told petitioner that he was to be subject to a student disciplinary procedure before the Student Conduct Committee, gave him the date and time of the hearing, briefly described the procedures to be followed, and referred him to an internet link to the Student Conduct Code.

On June 8, petitioner received—in response to his attorney's communications with PSU—additional information, including a hearing-process outline, a list of anticipated witnesses, the names of the committee members who would hear petitioner's case, and copies of the investigatory documents provided to the committee. Those documents—a report of the Campus Public Safety Office and a summary of information gathered by the office of the Dean of Student Life that led to the allegations against petitioner—described the following events.

On April 20, 2012, a PSU professor reported that a student had told her that petitioner, a PSU graduate student, had threatened two PSU faculty members. The student reported that petitioner had said of one faculty member, "'I'm about ready to stick a 45 in his ass,'" and of another, "'he could get shot.'" Officers from PSU Campus Public Safety, the Portland Police Bureau, and Project Respond went to

visit petitioner at his off-campus apartment the same day. Petitioner initially denied having any weapons, but then admitted having guns in the apartment. The officers found four guns, including a .45 caliber handgun and an M4 assault-style rifle, as well as spare magazines, ammunition, knives, and survival and first-aid supplies, including "battlefield dressings," in the apartment. Petitioner was subsequently "interim suspended" and excluded from campus.

By letter from his attorney on June 12, petitioner objected to the procedures that PSU proposed to use in conducting the hearing, contending that they were "inconsistent with the requirements of [former] ORS 351.088, viz., ORS 183.413 - .497 and .502." Petitioner argued that his expulsion required procedures consistent with contested case procedures under the APA, "includ[ing], inter alia, representation by counsel (ORS 183.417(1)) and issuance of subpoenas on behalf of a party (ORS 183.440)."

The Student Conduct Code hearing was held on June 13 and June 18, 2012. Because he had been excluded from campus, petitioner participated in the hearing by telephone. In accordance with PSU's Student Conduct Code hearing procedures, petitioner's attorney was permitted to be present to advise petitioner, but was not permitted to question witnesses or to make statements. Petitioner himself was also not entitled to cross-examine witnesses directly. Instead, the procedures allowed petitioner to direct questions to the chair of the committee, who would decide if those questions should be answered by the witness; petitioner chose not to do that.

PSU presented three witnesses: the PSU Director of Conduct and Community Standards, who provided an overview of the investigation and allegations against petitioner; the student who had reported petitioner's threats; and a PSU Campus Public Safety Officer who had visited petitioner's apartment. None of the witnesses was under oath, though they were warned that "falsification, distortion or misrepresentation before the Student Conduct Committee" constitutes a violation of the Student Conduct Code for which disciplinary charges could be brought.

Petitioner gave an opening statement, responded to the investigation documents, and gave a closing statement. He also called two witnesses on his behalf and submitted evidence to the committee, including a blog post and a video of a local television interview that he had had about the incident. The committee chair excluded other documentary evidence offered by petitioner.

Petitioner was subsequently told that the committee had found that he had violated the Student Conduct Code as charged and that he was being expelled. In accordance with the Student Conduct Code procedures, *see former* OAR 577-031-0143, petitioner appealed the committee's decision to PSU's Vice President for Student Affairs, Jacqueline Balzer. Petitioner renewed his objection to the procedures used in the expulsion hearing. Balzer met with petitioner at his attorney's office to hear petitioner's appeal, and, by letter of August 16, 2012, upheld the expulsion. Petitioner seeks judicial review of that decision.[4]

As an initial matter, we must decide whether we have jurisdiction to review the expulsion order. *See, e.g., Mangus v. Progress Quarries, Inc.*, 290 Or 377, 379, 622 P2d 319 (1981) (appeals are allowed only to the extent provided by statute; courts may not create their own jurisdiction); *see also, e.g., Oregon Health Care Assn. v. Health Div.*, 329 Or 480, 992 P2d 434 (1999) (dismissing petition for judicial review because neither ORS 183.482(1) nor any other statute authorized Court of Appeals to review the orders at issue).

Petitioner contends that the statutory basis for judicial review in this case is ORS 183.482, which authorizes judicial review of contested cases,[5] and *former* ORS 351.088. PSU, on the other hand, contends that its decision is not subject to judicial review under ORS 183.482 because, under *former* ORS 351.088, the APA, of which ORS 183.482 is a part, does not apply to this proceeding. And, the rules that PSU promulgated under the authority of *former* ORS

---

[4] PSU agrees that the Vice President's decision constitutes a final agency order but does not agree that it was a final order in a contested case.

[5] ORS 183.482(1) provides, in part, that "[j]urisdiction for judicial review of contested cases is conferred upon the Court of Appeals."

351.088 also do not provide for such review; thus, there is no basis for judicial review of the expulsion order. As explained below, we conclude that we have jurisdiction under ORS 183.482 to review PSU's order.

This is an unusual case in that the jurisdictional question is inextricably intertwined with the merits of the dispute. That is because our resolution of the jurisdictional issue requires us to determine the proper construction of *former* ORS 351.088, the statute on which the parties' arguments on the merits is based.

*Former* ORS 351.088 provides:

"Notwithstanding ORS chapter 183, the State Board of Higher Education or any public university listed in ORS 352.002 may, by rule, establish adjudicative procedures that are consistent with federal and state constitutional requirements and other provisions of law. The adjudicative procedures shall be consistent with ORS 183.413 to 183.497 and 183.502 whenever the type of hearing or procedure is substantially of the character that would necessitate the procedures required by ORS 183.413 to 183.470."

Looking first to the text, the opening sentence of the statute appears to authorize public universities listed in ORS 352.002, which includes PSU, to bypass Oregon's Administrative Procedures Act (that is, ORS chapter 183)[6] as long as it adopts adjudicative procedures that are "consistent with federal and state constitutional requirements and other provisions of law." The second sentence further specifies that, when the university action is "substantially of the character that would necessitate the procedures required by ORS 183.413 to 183.470," the adjudicative procedures adopted under the authority of *former* ORS 351.088 "shall be consistent with ORS 183.413 to 183.497 and 183.502."

That second sentence is key. First, in describing the type of actions to which it applies, the sentence references "ORS 183.413 to 183.470," the statutes prescribing

---

[6] The parties apparently agree that the APA would otherwise have applied to PSU. We agree. The APA defines "agency" to mean "any state board, commission, department, or division thereof, or officer authorized by law to make rules or to issue orders, except those in the legislative and judicial branches." ORS 183.310(1).

the procedures to be used in agency contested cases. *See,
e.g.,* ORS 183.413 (party to contested case has right to pre-
hearing notice of rights and procedures); ORS 183.415 (right
to a hearing in contested case); ORS 183.417 (contested case
hearing procedures); ORS 183.425 (depositions, subpoenas,
other methods of discovery in contested case); ORS 183.440,
ORS 183.445 (issuance of subpoenas in contested case); ORS
183.450 (evidence in contested cases); ORS 183.460 (exam-
ination of record by agency; right to file exceptions); ORS
183.462 (agency statement of ex parte communications and
right to rebut); ORS 183.464 (proposed order by hearing offi-
cer); ORS 183.470 (orders in contested cases). Next, it states
that, if the university proceeding is "substantially of the
character" that would "necessitate" those contested case pro-
cedures, the procedures promulgated by the university under
the authority of the statute must "be consistent with ORS
183.413 *to 183.497* and 183.502." (Emphasis added.) Notably,
that statutory sequence includes ORS 183.480 to 183.497,
the judicial review provisions of the APA. In particular, ORS
183.480(2) provides that "[j]udicial review of final orders of
agencies shall be solely as provided by ORS 183.482, 183.484,
183.490 and 183.500"; ORS 183.482(1) confers "[j]urisdiction
for judicial review of contested cases * * * upon the Court of
Appeals"; and ORS 183.484(1) confers "[j]urisdiction for judi-
cial review of orders other than contested cases * * * upon
the circuit court," as specified, with appeal to the Court of
Appeals, ORS 183.500.[7]

Accordingly, we must determine, first, whether the
proceeding used to expel petitioner was of the type described
in the second sentence—that is, was it "substantially of the
character" that "necessitate[d]" contested case procedures
under ORS chapter 183—and, second, if it was, whether the
university's adjudicative procedures were consistent with
the judicial review provisions of the APA.

With regard to the former, we readily conclude that
the expulsion process at issue here was the type of proceeding

---

[7] Petitioner also challenged his expulsion order in circuit court under ORS
183.484 (Clatsop County Circuit Court Case No. 122514), and, on stipulation
of the parties, that action was abated pending our resolution of this review
proceeding.

that necessitated contested case procedures under the APA.[8] As petitioner points out, the expulsion proceeding plainly meets one of the definitions of "contested case" specified in the APA—that is, it was "a proceeding before an agency" "[w]here the agency has discretion to suspend or revoke a right or privilege of a person." ORS 183.310(2)(a)(B). Because PSU was seeking to revoke petitioner's privilege to attend the university, the university's action was not only "substantially of the character" that necessitated contested case procedures, it *was,* by definition, such an action. Cf. *Morrison v. UOHSC,* 68 Or App 870, 872, 685 P2d 439 (1984) (determining, before the enactment of ORS 351.088, that university's "decision to dismiss petitioner for 'lack of professional skills development and lack of adequate clinical performance' constitutes a discretionary action that revokes a student's privilege to attend the university and is therefore a 'contested case' under ORS 183.310(2)(a)(B)").

PSU does not refute the proposition that the expulsion procedure at issue here satisfies the definition of contested case in ORS 183.310(2)(a)(B); rather, it contends that that definition is inapposite, and, instead, the question is determined by reference to PSU's own rules. It construes the second sentence of *former* ORS 351.088 to mean "that PSU shall use procedures that are 'consistent with' already-established contested case procedures *if PSU decides to require a contested-case type procedure."* (Emphasis added.) Because "PSU has not required a hearing procedure that is the nature of a contested case" and, "[i]n fact, PSU's administrative rules expressly state that hearings on violations of the Student Conduct Code are *not* contested cases under the APA and do not follow formal courtroom procedures[,]" in PSU's view, "[a]ccordingly, a Student Conduct Code hearing at PSU is not of the character of a contested case and the second clause of [*former*] ORS 351.088 does not require

---

[8] "Necessitate" is defined to mean "to make necessary : as **a** (1) : to make inevitable : make unavoidable <difficult circumstances seemed to ~ a certain gloominess on his part> (2) : to involve as an essential element or inevitable outcome or unavoidable consequence <goodness ~s a sharing of itself> <his private practice grew to large proportions, *necessitating* the employment of assistants * * * **b** : to cause to be required as an indispensable preparation, *condition,* or accompaniment <the complexity of the problem ~s careful thought and good judgment>." *Webster's Third New Int'l Dictionary* 1511 (unabridged ed 2002).

Student Conduct Code hearing procedures to be consistent with the APA." (Emphasis in original.) In other words, in its view, PSU itself gets to determine—in rules adopted under the authority of *former* ORS 351.088—whether a procedure is "substantially of the character" that necessitates contested case procedures.[9]

That position is untenable. First, and significantly, there is nothing in the text of the statute that would allow such a reading. While we agree with PSU that the statute's introductory clause—*viz.*, "[n]otwithstanding ORS chapter 183"—"means that public universities may [*as provided in the statute*] establish adjudicative procedures that are different from the APA," it does not foreclose reference to the APA to determine whether the university action is "substantially of the character" of a contested case—that is, whether the university is doing something that, under the APA, would require contested case procedures. Indeed, the APA would be the most obvious reference point for making that assessment.

PSU disagrees, contending that construing the statute in that way would have the effect of nullifying the statute—that is, in PSU's view, that reading of the statute would make the APA inapplicable to the university under the first sentence but, in the second sentence, would require the university to provide equivalent administrative procedures in every instance in which the APA would otherwise require them. Although the language chosen by the legislature is indeed somewhat puzzling, we disagree that the language must be understood to function in such a circular manner. For example, the second sentence of the statute does not require universities to provide adjudicative procedures that are *identical* to APA contested-case proceedings in the circumstances

_____

[9] At oral argument, PSU shifted its position somewhat and argued that we should look to other precepts of law (outside the APA), such as due process, to determine when contested-case-like procedures are required under the statute. However, that proposed construction of the statute fails to give any meaning to the second sentence that is not already covered by the first sentence. "As a general rule, we assume that the legislature did not intend any portion of its enactments to be meaningless surplusage." *State v. Stamper*, 197 Or App 413, 418, 106 P3d 172, *rev den*, 339 Or 230 (2005) (citing ORS 174.010; *Bolt v. Influence, Inc.*, 333 Or 572, 581, 43 P3d 425 (2002)).

described, only that they be *"consistent with"* those types of procedures. Thus, the statute contemplates that the universities would have some flexibility in the procedures afforded. Moreover, it is possible that, by referring to actions that are "substantially of a character" of a contested-case proceeding, the legislature meant to narrow the range of actions that would be subject to contested-case-like procedures. In any event, contrary to PSU's position, the "notwithstanding" clause of *former* ORS 351.088, read in light of the statute as a whole, as we must, cannot be understood to authorize the university itself to unilaterally make that determination.

Second, even assuming that legislative history could somehow overcome that textual shortcoming in PSU's argument—*but see State v. Gaines*, 346 Or 160, 171, 206 P3d 1042 (2009) (statutory construction focuses on the reasonable construction of the words of the statute itself because "[o]nly the text of a statute receives the consideration and approval of a majority of the members of the legislature")—it does not in any event help PSU here. *Former* ORS 351.088 was first enacted in 1999.[10] Or Laws 1999, ch 70, § 2. PSU is correct that the bill was intended to provide "universities the flexibility to use hearing procedures less formal than those codified in the APA." *See, e.g.,* Testimony, Senate Committee on Education, SB 163, Feb 22, 1999, Ex B (statement of Melinda Grier, Director, Legal Services, Oregon University System) (explaining that, under the APA, "state agencies are required to hold formal 'contested case' hearings whenever there is a constitutional or statutory requirement for any type of hearing" and the bill would "allow[] the Board of Higher Education and its universities to provide

---

[10] For our purposes, the 2011 version of *former* ORS 351.088 at issue here is materially the same as the version that the legislature enacted in 1999, although the legislature subsequently amended the 1999 statute. Specifically, as enacted in 1999, the second sentence of the statute read, "The adjudicative procedures shall be consistent with ORS 183.413 to 183.497 and 183.502 whenever the type of hearing or procedure is substantially of the character that would necessitate the procedures required by ORS *183.415, 183.425, 183.450, 183.460 or* 183.470." (Emphasis added.) In 2007, the legislature replaced the emphasized text with "183.413 to" as part of a bill that, among other things, amended the contested-case-proceedings portion of the APA. *See* Or Laws 2007, ch 288, § 14. Then, in 2011, the legislature replaced "state institution of higher education under the jurisdiction of the board" in the first sentence with "public university listed in ORS 352.002." *See* Or Laws 2011, ch 637, § 12. Those changes do not affect our analysis.

informal hearings on matters where constitutional and statutory requirements permit").

However, the legislative history also makes clear that the flexibility to use less formal procedures was not intended to operate across the board, but, rather, only when the circumstances warranted it. Dave Frohnmayer, President of the University of Oregon, testified that Oregon had followed the "1961 Model Act" in enacting the APA, and the 1961 Model Act provided for a very formal procedure—essentially, all the protections of a civil jury trial absent the jury, including "elaborate written notice, * * * full cross-examination, right to counsel, recording of the proceedings, very elaborate rules of evidence, detailed full written orders"—any time due process required a hearing. Tape Recording, Senate Committee on Education, SB 163, Feb 22, 1999, Tape 37, Side A (statement of Dave Frohnmayer, President, University of Oregon). Subsequently, the concept of "flexible due process" emerged as courts began construing a greater variety of government actions to require some kind of hearing, but the type of hearing required depended on the circumstances, and the more recent 1981 Model Administrative Procedure Act reflected that concept. *Id.*

As Frohnmayer discussed in his testimony, the 1981 Model Act—unlike the earlier 1961 Model Act on which the Oregon APA was based—reflected that

> "agencies ought to be free to adopt informal adjudicatory procedures in addition to formal adjudicatory procedures, saving the former for those situations where we're talking about a minor library fine or a student discipline, *something short of expulsion*, where you don't have to throw the book at a student, where you don't have to scare people with the formality of the process. *And that's really what we're attempting to do here.*"

*Id.* (emphases added);[11] *see also* Testimony, Senate Committee on Education, SB 163, Feb 22, 1999, Ex B (statement

---

[11] The 1981 Model Act established three procedural models for adjudication. "The first, called 'formal adjudicative hearing' is an elaborate but generally recognizable development of the 'contested case' of the [1961] Model Act. The other two models are new. They are called, respectively, 'conference adjudicative hearing' and 'summary adjudicative proceedings.'" Uniform Law Commissioners' Model State Administrative Procedure Act (1981), § 4-201 comment. The 1961 Model

of Melinda Grier, Director, Legal Services, Oregon University System) (at the time the Oregon APA was adopted, the Model Act "used a one-size-fits-all formal procedure," whereas the new Model Act "allow[ed] for informal procedures as well as more formal ones"); *id.* (explaining that, under the concept of flexible due process, "the type of hearing required when considering the appeal of a library fine should be different than the type of hearing required to terminate an employee"). Thus, if anything, the legislative history of *former* ORS 351.088 supports the notion that, at least to the extent that the legislature intended to follow the 1981 Model Act in the public-university setting, a student expulsion is precisely the type of proceeding that it understood *would* require more formal contested-case-type procedures.

We thus conclude that petitioner's expulsion hearing was "substantially of the character" that "necessitate[d]" contested case procedures under ORS chapter 183. Accordingly, we turn to the second question, *viz.*, whether PSU's adjudicative procedures were "consistent with" ORS 183.480 to 183.497, the judicial review provisions of the APA, as explicitly required under the second sentence of *former* ORS 351.088.

Resolution of that question is simple. Because PSU procedures do not allow for any judicial review of the expulsion decision—the rules explicitly provide that student conduct hearings are not contested case hearings, *former* OAR 577-031-0140(5), and appeal of the hearing officer's decision is to the Vice Provost of Student Affairs, whose decision is final, *former* OAR 577-031-0143(1)—they cannot be "consistent with" those provisions. Whatever else "consistent with" might mean,[12] rules that do not allow for any form of extra-agency, let alone *judicial*, review cannot be "consistent with" that requirement.

---

Act, in contrast, "described a single type of adjudicative hearing—the contested case." *Id.*

   [12] The relevant dictionary definition defines "consistent" to mean "marked by agreement and concord * * * : coexisting and showing no noteworthy opposing, conflicting, inharmonious, or contradictory qualities or trends : COMPATIBLE - usu. used with *with*." *Webster's* at 484.

It follows that we have jurisdiction to review the decision under ORS 183.482(1). *Former* ORS 351.088 *allowed* PSU to establish its own adjudicative procedures, notwithstanding the APA—that is, notwithstanding the procedures that would, as the parties apparently agree, otherwise apply to the university's action in this case. However, the statute also set out requirements that PSU had to satisfy for it to take advantage of that authority, including establishing procedures consistent with the judicial review provisions of the APA in specified circumstances. Here, as we have just determined, PSU failed to do that. Accordingly, *former* ORS 351.088 does not operate to exempt PSU's action from the provisions of the APA, including the availability of judicial review. Turning to those provisions, because, for purposes of the APA, PSU was an "agency" under ORS 183.310(1) (*see* 281 Or App at 300 n 6), and the expulsion proceeding is a "contested case" under ORS 183.310(2)(a)(B) (*see* 281 Or App at 301-02), we have jurisdiction under ORS 183.482(1) to review the expulsion order.

We turn to the merits. Among other things, we review for legal error, and we may reverse and remand if we determine that the agency erred. ORS 183.482(8)(a)(B).[13] Here, it is undisputable that PSU did not follow the contested case procedures of the APA when it expelled petitioner; PSU acknowledges as much. Among other things, petitioner was not allowed to be represented by counsel, ORS 183.417(1), cross-examine witnesses, ORS 183.450(3), or issue subpoenas, ORS 183.440, and the testimony of witnesses was not taken by oath or affirmation, ORS 183.417(6). Consequently, PSU committed legal error when it expelled petitioner, and we reverse and remand for further proceedings.

Reversed and remanded.

---

[13] Again, because PSU failed to satisfy the requirements in *former* ORS 351.088 that it had to meet to avoid the application of the APA to its actions, the APA applies.