**FILED**
**AUGUST 4, 2020**
**In the Office of the Clerk of Court**
**WA State Court of Appeals Division III**

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| DANIEL NELSON, | ) | No. 36556-5-III |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | PUBLISHED OPINION |
| | ) | |
| SPOKANE COMMUNITY COLLEGE, | ) | |
| | ) | |
| Respondent. | ) | |

PENNELL, C.J. — Spokane Community College (SCC)'s standards for student conduct identify plagiarism as a misconduct violation to be handled through the school's adjudicative hearing process. But when Daniel Nelson was accused of plagiarizing a homework assignment in his Nursing 200 class, he was not afforded a hearing. Instead, he was issued a failing grade for the class and, as a result, dismissed from the nursing program. SCC claims this action was justified because it constituted a grading decision, not student discipline. We disagree. SCC's student conduct standards, as well as the

Nursing 200 class syllabus and nursing handbook, designate plagiarism as a student misconduct problem, not a grading issue. A hearing is thus required. We grant Mr. Nelson relief from SCC's action and remand for further proceedings.

BACKGROUND

*Events leading to Mr. Nelson's failing grade and dismissal*

Daniel Nelson was a nursing student at SCC. During his final semester, Mr. Nelson registered for Martha Sells's Nursing 200 class, a requisite course for graduation. Nursing 200 had several graded components, including "Group work/Assignments/Case Studies," which amounted to 20 percent of the course points. Clerk's Papers (CP) at 304. A minimum score of 78 percent on all course points was required to pass.

Passing Nursing 200 was important to Mr. Nelson. He had previously failed the course and, under the SCC's nursing school policy, Ms. Sells' class was his final opportunity to pass the class.

During Mr. Nelson's enrollment in Nursing 200, Ms. Sells determined Mr. Nelson plagiarized a homework assignment. After some investigation, she decided Mr. Nelson's conduct was intentional and merited a consequence. In consultation with other nursing faculty, Ms. Sells decided Mr. Nelson should receive not only a zero on the plagiarized

assignment, but a failing grade for the entire Nursing 200 class. This outcome was described as a sanction for Mr. Nelson's "violation" of the "Academic Integrity policy." CP at 30. Mr. Nelson's failing grade in Nursing 200 mandated his dismissal from the nursing program.

Mr. Nelson received news about his failing grade and removal from the nursing program during a meeting with Ms. Sells and other faculty. Although Mr. Nelson denied the plagiarism accusation, he was not offered an adjudicative hearing.

*SCC's disciplinary rules*

Washington law authorizes community colleges such as SCC to enforce student conduct rules. RCW 28B.50.140(13). The rules specific to SCC are located in chapter 132Q-10 of the Washington Administrative Code (WAC). Under the WAC, student conduct violations are marshalled by a student conduct officer. *See* WAC 132Q-10-105(11), (23),-306. Student conduct violations carry the right to an adjudicative hearing and appeal. *See* WAC 132Q-10-105(10), (11). Individual faculty members are not authorized to impose discipline for student conduct violations, except when necessary to maintain classroom decorum. *See* WAC 132Q-10-500. The maximum penalty for a classroom decorum sanction is three days' suspension. WAC 132Q-10-500(3). Outside

the context of classroom decorum, all student conduct violations are governed by a robust set of hearing and appeal rights. *See* WAC 132Q-10-200, -310.

Plagiarism is specifically addressed by the student conduct standards. WAC 132Q-10-210(a)(v). The standards define cheating through plagiarism as an "[a]cademic dishonesty and ethnical violation[ ]" that can result in student conduct sanctions. WAC 132Q-10-210. Possible sanctions include temporary suspension, revocation of admission or degree, withholding of a degree, and expulsion. WAC 132Q-10-400(1)(i), (j), (2). SCC's student conduct standards do not mention any avenues for instructors to impose plagiarism sanctions.

Both the Nursing 200 syllabus and the Nursing Student Handbook refer to the WAC's student conduct standards when discussing academic integrity and prohibitions on plagiarism. Both documents cite WAC 132Q-10's "'Standards for Conduct for Students'" and state, "Plagiarism, cheating, and any other violations of the Standards of Conduct for students will be reported to the SCC Student Conduct Officer." CP at 219, 305. The documents also state, "[s]anctions for academic integrity violations may include receiving a failing grade for the assignment or examination, or possibility a failing grade for the course. In some cases, the violation may also lead to the student's dismissal from the Nursing program and/or the college." CP at 305. Neither the class syllabus nor the

nursing handbook refer to any authority other than the WAC for imposing plagiarism

sanctions.

*Mr. Nelson's request for adjudicative process*

Though not offered by SCC, Mr. Nelson requested an adjudicative hearing to

challenge his failing grade and dismissal from the nursing program. SCC denied his

request. It reasoned a hearing was not warranted because Mr. Nelson's dismissal from the

nursing program was an academic decision, not a student conduct sanction. According to

SCC, the procedural protections afforded by the WAC do not apply in this context.

Mr. Nelson appealed SCC's decision to the Spokane County Superior Court. The

court denied relief and Mr. Nelson now appeals.

ANALYSIS

Washington's public colleges are state agencies subject to the Administrative

Procedure Act (APA), chapter 34.05 RCW. RCW 34.05.010(2), (7); *Arishi v. Wash. State

Univ.*, 196 Wn. App. 878, 884, 385 P.3d 251 (2016). When adjudicating a claim under

APA, our court owes no deference to the superior court; we review the agency's action

directly, as set forth in the administrative record. *Arishi*, 196 Wn. App. at 895. Legal

issues pertinent to our analysis are reviewed de novo. *Hardee v. Dep't of Soc. & Health

Svs.*, 172 Wn.2d 1, 7, 256 P.3d 339 (2011).

No. 36556-5-III
*Nelson v. Spokane Cmty. Coll.*

Three types of agency actions are subject to judicial review under APA: (1) rules, (2) orders in adjudicative proceedings, and (3) "other agency action." RCW 34.05.570(2)-(4). The first two types of agency actions are inapplicable here. Mr. Nelson does not challenge any of SCC's official rules. Nor was he part of an adjudicative proceeding. We therefore consider his appeal under the third, catch-all category of "other agency action." RCW 34.05.570(4).

Relief from "other agency action" is available if the court determines the action is:

> (i) Unconstitutional;
> (ii) Outside the statutory authority of the agency or the authority conferred by a provision of law;
> (iii) Arbitrary or capricious; or
> (iv) Taken by persons who were not properly constituted as agency officials lawfully entitled to take such action.

RCW 34.05.570(4)(c).

More than one of the aforementioned types of action may be at play in this case, but the most directly applicable is the last: action taken by someone without lawful authority. Mr. Nelson argues plagiarism is a misconduct issue that falls under the exclusive purview of SCC's student conduct standards. As such, a faculty member like Ms. Sells lacks disciplinary authority. Instead, the power to sanction acts of plagiarism lies with SCC's student conduct officer and the student conduct adjudicatory process.

SCC agrees Ms. Sells lacked authority to sanction Mr. Nelson for a student conduct violation. However, it claims Ms. Sells issued a grading decision, not a sanction. SCC notes that academic assessments of a student's work are matters of professional judgment and, as such, should not be subject to the adjudicative procedures of a hearing and appeal. *See Bd. of Curators of Univ. of Mo. v. Horowitz*, 435 U.S. 78, 87-88, 98 S. Ct. 948, 55 L. Ed. 2d 124 (1978).

SCC's reasoning has some intuitive appeal, but it is contrary to the applicable WAC. SCC's WAC defines plagiarism as a student conduct issue, not an academic matter. WAC 132Q-10-210(a)(v). Unlike other postsecondary institutions in Washington, SCC does not carve out a role for instructors or other faculty to handle academic dishonesty violations. *Contra* WAC 132B-120-040(19)(d)-(e) (Grays Harbor College); WAC 132F-121-120 (Seattle Colleges); WAC 132S-100-423(1) (Columbia Basin College); WAC 132V-121-070(10)(c)(ii) (Tacoma Community College); WAC 132W-115-070(1)(d) (Wenatchee Valley College); WAC 172-90-100(4)(a) (Eastern Washington University); WAC 504-26-415(1) (Washington State University). The definitional scheme set by the WAC does not allow SCC the discretion to circumvent student conduct protections by branding disciplinary action taken in response to plagiarism as academic.

In addition, the consequence suffered by Mr. Nelson for plagiarism was not limited to a professional grading decision. Mr. Nelson does not dispute Ms. Sells could have issued a failing grade for his assignment based on her assessment that it did not meet academic standards. But that is not what happened. Ms. Sells did not merely issue a zero grade for Mr. Nelson's assignment. She failed him from the entire class as a penalty for violating the academic integrity policy. The WACs did not empower Ms. Sells to take this type of disciplinary action.

No source other than the WACs governs imposition of sanctions for academic integrity violations at SCC. No separate statute or rule confers disciplinary power on instructors or department heads.[1] Even the nursing student handbook and the Nursing 200 syllabus reference the WAC as the sole legal authority for penalizing academic integrity violations such as plagiarism.[2]

---

[1] SCC's board policy provides students an academic appeal process when they are dissatisfied with a specific grade. This right afforded to students does not confer disciplinary authority on instructors or other faculty.

[2] Had the handbook or syllabus purported to confer disciplinary powers not contemplated by the WAC, their legality would be questionable. Contrary to SCC's position, *Buechler v. Wenatchee Valley Coll.*, 174 Wn. App. 141, 298 P.3d 110 (2013), did not recognize a student handbook as an independent source of disciplinary authority. *Buechler* merely harmonized a student handbook with provisions of the governing WAC. *Id*. at 152.

The decision of how to punish Mr. Nelson for plagiarism in violation of SCC's academic integrity policy falls to the student conduct officer and the adjudicative bodies identified in SCC's student conduct WAC. Because Mr. Nelson has shown an SCC official took disciplinary action against him without lawful authority, he has established a basis for relief under the APA.

## ATTORNEY FEES

Mr. Nelson requests an attorney fee award under the equal access to justice act (EAJA), RCW 4.84.340-.360. The EAJA requires a fee award "unless the court finds that the agency action was substantially justified or that circumstances make an award unjust." RCW 4,84.350(1). An appellant need not prevail on the merits of an administrative claim to be awarded fees. *Arishi*, 196 Wn. App. at 909. It is enough to prevail in arguing for the right to an adjudicative hearing. *Id*. Our court, as a separate body from the superior court, has authority to assess up to $25,000 in fees under the EAJA. *Costanich v. Dep't of Soc. & Health Svs.*, 164 Wn.2d 925, 933, 194 P.3d 988 (2008).

Although Mr. Nelson has prevailed on the primary issue raised on appeal, we decline to award fees. Our dissenting colleague's analysis of the parties' positions is, in our opinion, incorrect. Nevertheless, it is not unreasonable. Fees in such circumstances are unwarranted. *See Arishi*, 196 Wn. App. at 910.

No. 36556-5-III
*Nelson v. Spokane Cmty. Coll.*

CONCLUSION

The superior court order denying relief is reversed. This matter is remanded to SCC for an adjudicative proceeding under chapter 132A-10 WAC.

_____
Pennell, C.J.

WE CONCUR:

_____
Siddoway, J.

No. 36556-5-III

KORSMO, J. (dissenting) — The majority cites no authority forbidding a teacher from failing a student for cheating. It likewise cites no authority holding that the school's student conduct administrative hearing process is the *exclusive* means of addressing cheating in the classroom. For both reasons, I respectfully dissent.

Little needs to be said. If the Washington Administrative Code is the actual basis for a teacher's grading authority, I presume the majority could point to the relevant provision prohibiting a teacher from failing a student for cheating. It does not.[1] Instead, both the course syllabus and the nursing program's handbook identified course failure as one consequence for cheating. Since students are permitted to repeat only one course, a person who has already failed a course will be kicked out of the nursing program upon a second failure. The handbook expressly warned students of this possibility.

If the student conduct discipline process is the exclusive means of addressing cheating, I am sure the regulations would so state. They do not. The majority cites

---

[1] The examples cited by the majority do not aid its argument. Seattle Colleges, for example, recognize that a teacher can impose sanctions <u>and</u> also refer the student for school discipline. WAC 132F-121-120(1), (3). The student may both grieve the grading decision and use the administrative appeals process to challenge any school discipline. WAC 132F-121-120(4). These provisions merely recognize that classroom cheaters can be addressed by both procedures. The use of one is not to the exclusion of the other.

unremarkable passages that state that administrators (not teachers) are the people who conduct disciplinary hearings and that academic integrity violations are part of the student conduct code. The desire of a school to enforce its conduct requirements in accordance with the Washington Administrative Procedures Act, ch. 34.05 RCW (as required by statute) does not evince intent to limit teachers' classroom authority. The two systems can exist side by side; the existence of one does not negate the other. There also is no reason that the areas of concern to each system cannot overlap. Both can have subject matter jurisdiction over classroom cheating.

Mr. Nelson availed himself of the grade appeal process—and lost. Because of previous course failure, he could not continue in the nursing program due to its one repeat limitation, a rule that he does not challenge here. Thus, the effect of his two course failures removed him from the program, but not the school. But he was not subject to a disciplinary decision by the teacher merely because the result of his cheating ends up looking like a disciplinary action.

Having lost at the process available to him, he decided to sue and argue that he should have been subject to the discipline process instead of the grade appeal process. But since the school had no desire to impose additional sanctions, there was no reason for them to take action via the disciplinary process. Mr. Nelson was welcome to continue on at the school. It simply is not the case that he was "prosecuted" by the wrong sovereign following the wrong process. The teacher exercised her discretion, advertised in

2

advance, to not tolerate those who cheat in a required course.  I see no impediment to her

doing what she did.

Thus, I dissent.

_____
Korsmo, J.