CLINTON F. BARNARD *vs.* INHABITANTS OF SHELBURNE.

Franklin.    September 16, 1913. — October 22, 1913.

Present: RUGG, C. J., MORTON, BRALEY, SHELDON, & DE COURCY, JJ.

*School and School Committee.*

The duty of care and management of public schools, which is vested in a school committee, includes the right to establish and maintain standards for the promotion of pupils from one grade to another and for their continuance in any particular grade; and, so long as the committee act in good faith in the performance of such duty, their conduct is not subject to review by any other tribunal.

Where a child has been excluded by a school committee in good faith from a certain school or grade because of his failure to satisfy the standard of scholarship set by the school committee for that school or grade, and he is given an opportunity to attend another school or grade adapted to his ability and accomplishments, there has been no "unlawful exclusion" of the child from the public schools within the meaning of R. L. c. 44, § 7.

Where the ground of exclusion of a child from a public school is failure in his studies and not misconduct, the school committee are not required by R. L. c. 44, § 8, to give the pupil an opportunity for a hearing.

RUGG, C. J.    This is an action of tort to recover damages (as alleged in the declaration) for wrongful exclusion of the plaintiff from the "public High School" of Shelburne. The trial judge * ruled that there was no evidence that the plaintiff might not have gone to a school of the ninth grade. This ruling appears to have been right and became the law of the case for the purposes of that trial.

The evidence tended to show that the plaintiff entered the high school in its freshman class in the autumn of 1910, and that from the first he fell below the required standard of excellence in one or more branches of instruction, information as to which was sent to his father once at least, and that in December written notice was given to his father that he could not longer continue in the high school, accompanied with a suggestion that the boy go to a Miss Johnstone, who was teacher of a ninth grade school

---

* *Bell*, J. There was a verdict for the plaintiff in the sum of $325. The defendant alleged exceptions.

in the same village, for the rest of the year, and with an expression of hope that he then would be able with this additional preparation to do the high school work. It was testified by the principal of the high school that the conduct of the boy had nothing to do with the letters written about his ability to keep up with his class. There is nothing in the record to control this evidence. It is plain from the reports of teachers as to his standing that he failed to attain a standard of sixty per cent. or was deficient in three branches, and the plaintiff himself testified that he thought this was so. A rule adopted by the school committee was put in evidence to the effect that "Pupils standing below sixty per cent. in two or more subjects shall be demoted one grade, and when such deficiency occurs in the freshman class the delinquent shall be dropped from the roll of the school." Apparently this merely was putting in more permanent form a standard previously adopted by the faculty of the school. It properly might apply to pending cases. The only ground of exclusion which finds any support in the reported evidence is deficiency in studies. After the December letter was sent, the plaintiff remained away from any school until the following March, when he presented himself at the high school and was refused admission by the principal until he had seen the chairman of the school committee. He had an interview with the chairman, as to which the plaintiff testified:— "He wanted to know if I had prepared myself further, and I told him I had not, and he told me I could not enter the school until I had further prepared myself." On April 10 the father of the plaintiff applied in writing to the school committee for a statement in writing of the reasons for the exclusion. According to the testimony of the father a reply to this application was made, but it is not in the record. Two questions were submitted to the jury which, with their answers, were as follows:—

1. "Was the plaintiff excluded from the public schools of the town of Shelburne?" The jury answered, "He was."

2. "If the jury answer that he was excluded from the public schools, what was the grounds of such exclusion?" The jury answered, "His standing in the school not being high enough, such facts, however, in the minds of the jury not sustained by the evidence."

It must be understood that "public schools" as used in these

questions and answers refer to the high school and not to the system of schools of the town. This follows from the ruling given by the judge to the effect that there was no evidence that the plaintiff could not have gone to another school. The trial appears to have followed the strict issue made by the pleadings, namely, whether the plaintiff was excluded illegally from the high school. The first part of answer of the jury as to the cause of his exclusion follows the evidence. There is nothing in the evidence as reported to give color to a contention that he was excluded for any other reason than that his standing was not high enough.

The right of every child to attend the public schools is subject to such reasonable regulations as to qualifications of pupils to be admitted and retained in the respective schools as the school committee shall prescribe. R. L. c. 44, § 3. The school committee have general charge and superintendence over all public schools. R. L. c. 42, § 27. As was said by Knowlton, C. J., in *Hammond* v. *Hyde Park*, 195 Mass. 29, 30: — "This power is broad and ample. For the promotion of the best interests of pupils and of all the people, it necessarily has been construed broadly by the court." The care and management of schools, vested in the school committee, includes the establishment and maintenance of standards for the promotion of pupils from one grade to another and for their continuance as members of any particular class. So long as the school committee act in good faith their conduct in formulating and applying standards and making decisions touching this matter is not subject to review by any other tribunal. It is obvious that efficiency of instruction depends in no small degree upon this feature of our school system. It is an educational question, the final determination of which rests by law in the public officers charged with the performance of that important duty. Although this precise point never has been determined in this Commonwealth, it plainly follows, from the general principles by which public schools are governed, and from numerous decisions in which the powers of the school committee to establish reasonable rules and regulations for the government, discipline and general management of the public schools under their charge have been stated with clearness and precision as applicable to a considerable variety of circumstances. *Roberts*

v. *Boston,* 5 Cush. 198. *Sherman* v. *Charlestown,* 8 Cush. 160. *Spiller* v. *Woburn,* 12 Allen, 127. *Hodgkins* v. *Rockport,* 105 Mass. 475. *Russell* v. *Lynnfield,* 116 Mass. 365. *Watson* v. *Cambridge,* 157 Mass. 561. *Morrison* v. *Lawrence,* 181 Mass. 127, 131. *Alvord* v. *Chester,* 180 Mass. 20. *Morse* v. *Ashley,* 193 Mass. 294.

When the real ground for exclusion from a particular school or grade is failure to maintain a proper standard of scholarship and there is opportunity afforded to the pupil to attend another school adapted to his ability and accomplishments, there is no illegal exclusion from school within the meaning of the statute. It would seem from the latter part of the answer of the jury to the second question that the trial proceeded upon the theory that the jury had power to pass upon the inquiry whether in fact the plaintiff was delinquent in his studies and thus revise the conclusion of the school committee in this respect. But that was a matter plainly outside their province. When it had been ruled that there had been no exclusion of the plaintiff from the next lower grade of school, then the only possible issue was whether the exclusion of the plaintiff from the high school was an act of bad faith by the school committee. The burden of proving that as an affirmative proposition rested upon the plaintiff. It required support by evidence and could not be left wholly to surmise, conjecture or speculation. The record is bare of any evidence tending to show the existence of bad faith on the part of the school committee.

It has been argued that, because the school committee did not grant a hearing to the father upon his request, the exclusion was illegal, and reliance is placed upon *Bishop* v. *Rowley,* 165 Mass. 460, *Morrison* v. *Lawrence,* 186 Mass. 456, and *Jones* v. *Fitchburg,* 211 Mass. 66. These cases have no application. When the real ground of exclusion is not misconduct there is no obligation on the part of the school committee to grant a hearing. R. L. c. 44, §§ 7, 8. Failure to attain to a given standard of excellence in studies is not misconduct in itself. The reason for this distinction in the statute is obvious. Misconduct is a very different matter from failure to attain a standard of excellence in studies. A determination as to the fact involves investigation of a quite different kind. A public hearing may be regarded as helpful to

the ascertainment of misconduct and useless or harmful in finding out the truth as to scholarship.

*Exceptions sustained.*

*F. J. Lawler,* for the defendant.

*W. A. Davenport,* (*H. A. Weymoth* with him,) for the plaintiff.