William E. LAVASH, Jr.,
Plaintiff-Appellant,

v.

Wallace H. KOUNTZE, Jr.,
Defendant-Appellee.

No. 79–1109.

United States Court of Appeals,
First Circuit.

Argued June 7, 1979.

Decided Aug. 10, 1979.

Joseph F. Byrnes, Jr., Milford, Mass., with whom Aldred B. Cenedella, III, Milford, Mass., was on brief for plaintiff, appellant.

Betty E. Waxman, Asst. Atty. Gen., Boston, Mass., with whom Frances X. Bellotti, Atty. Gen., Boston, Mass., was on brief, for defendant, appellee.

Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.

PER CURIAM.

The issue in this case is whether appellant was denied equal protection and due process because, under Massachusetts law, civil service examinees are allowed to inspect and obtain review of essay examination results, but not the results of multiple choice examinations.

The district court, in a comprehensive and thoughtful opinion, found no constitutional violation and granted the defendant's motion for summary judgment. We affirm.

*The Facts*

Plaintiff-appellant, a sergeant in the Waltham Police Department, took a Massachusetts civil service examination in order to qualify for the rank of police lieutenant. The examination, which was administered by defendant-appellee, consisted solely of multiple choice questions. Appellant was notified that he scored 81% on the examination. Through his attorney, he promptly requested by letter that he be allowed to inspect the examination and his answers thereto and that he be allowed to appeal each of the answers which he believed to be incorrectly graded. This request was denied on the grounds that under Massachusetts law, a civil service examinee did not have the right to inspect or appeal the results of a multiple choice test.[1]

*The Equal Protection Claim*

Appellant agrees that the rational basis standard is to be used in determining whether the Massachusetts statute meets the equal protection requirement of the constitution. *Bauza v. Morales Carrion*, 578 F.2d 447, 450–51 (1st Cir. 1978). He contends, however, that the district court erred in its application of that test to the implicated statute. No case law is cited to support appellant's position and we have found none directly on point.

In allowing inspection and review of essay examinations, the Massachusetts legislature recognized that the subjective process of grading such tests is much more susceptible to error and abuse than the automatic grading of multiple choice tests. At oral argument, appellant's counsel candidly acknowledged that the chance of clerical error was not the issue, since the multiple choice tests are, on request, checked for clerical errors.[2] While it is conceivable that a review of multiple choice examinations might reveal an understandable misinterpretation of the meaning of a question or

---

1. The complaint, which is dated April 28, 1978, attacked Mass.Gen.Laws ch. 31, §§ 12(a) & 29 as being unconstitutional. Chapter 31 was recodified effective January 1, 1979. Act of July 12, 1978, ch. 393, § 11. The provisions of § 12(a) are now contained in §§ 22–24 of Mass. Gen.Laws ch. 31; the provisions of § 29 are now contained in § 70 of Mass.Gen.Laws ch. 31. The recodification did not affect the substantive provisions of the laws. Our reference will be to the recodified sections.

Mass.Gen.Laws ch. 31, § 22 provides for review of essay examinations. There is no provision for review of multiple choice tests.

Mass.Gen.Laws ch. 31, § 70 provides in pertinent part: "The question and answer sheets of examination papers, other than essay questions and answers, shall not be open for inspection and may be destroyed as determined by the administrator."

2. *See* the uncontradicted affidavit of Barbara E. Jarvis, Director of the Bureau of Examinations of the Massachusetts Division of Personnel Administration, which states in part:

Under my direction and control, the Bureau of Examinations re-scores, by hand, the answer sheets of all civil service examinees who express concern that their answer sheets have been erroneously graded and request the Division of Personnel Administration to re-score or recompute their grade.

uncover an error by the preparer in the determination of the correct answer to a question, these risks, in the judgment of the Massachusetts legislature, did not justify the expense and effort of opening up multiple choice tests to review. The law recognizes that no system can be made infallible.

In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some "reasonable basis," it does not offend the Constitution simply because the classification "is not made with mathematical nicety or because in practice it results in some inequality." *Lindsley v. Natural Carbonic Gas Co.*, 220 U.S. 61, 78, 31 S.Ct. 337, 55 L.Ed. 369.

*Dandridge v. Williams*, 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970).

The judgment of the Massachusetts legislature to restrict review of civil service examinations to essay tests was rational and not unreasonable. It does not contravene the constitutional guarantee of equal protection under the fourteenth amendment.

*The Due Process Claim*

Appellant contends that he has a constitutionally protected property interest in being fairly evaluated for promotion under the Massachusetts civil service system. Massachusetts has a detailed statutory procedure covering promotions. Test grades are a significant factor in determining promotion. Mass.Gen.Laws ch. 31, § 3(e) provides that the Civil Service Commission shall include in their rules provisions for "[p]romotional appointments, on the basis of merit determined by examination, and seniority of service." Under the civil service system, a promotion eligibility list of those who score highest on the examination for a particular position is drawn up and the administrator certifies three names to the appointing authority, one of which is selected for the promotion. Mass.Gen.Laws ch. 31, § 27. It may be, although we do not decide the matter, that this creates a prop-

erty interest within the rule of *Board of Regents v. Roth*, 408 U.S. 564, 571–72, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

We have made clear in *Roth, supra*, at 571–572, 92 S.Ct. 2709, that "property" interests subject to procedural due process protection are not limited by a few rigid, technical forms. Rather, "property" denotes a broad range of interests that are secured by "existing rules or understandings." *Id.* at 577, 92 S.Ct. 2709. A person's interest in a benefit is a "property" interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing. *Ibid.* *Perry v. Sindermann*, 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972).

But a constitutionally protected property interest does not automatically trigger a due process hearing. Three factors are to be considered.

First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976). There is no claim that appellee failed to follow the statute or the civil service rules. Appellant does not allege his test was marked incorrectly. Nor is there a claim that appellant was or would be kept off the eligible list or denied promotion because of his test score. What appellant wants is the right to have his test results reviewed and to have input into that review to foreclose the possibility that his score might have been adversely affected by the form of the questions and/or the preparer's determination of the correct answers. The private interest affected here, failure to be promoted through an erroneous determination, is almost chim-

erical. Opening up multiple choice examination results to inspection and review by all dissatisfied applicants for promotion would impose fiscal and administrative burdens out of all proportion to the ends sought. Such inspection and review would involve a challenge to the substantive validity of the examination. Court proceedings would require the opinion testimony of experts and submerge the court in the testing and grading process. In *DiPiro v. Taft*, 584 F.2d 1, 3 (1st Cir. 1978), we noted that "[t]he federal courts are not super personnel boards ordained to reevaluate appointments and dismissals made in the course of state and local government operations." The Supreme Court in *Board of Curators, Univ. of Mo. v. Horowitz*, 435 U.S. 78, 98 S.Ct. 948, 55 L.Ed.2d 124 (1978), held that, absent arbitrariness or capriciousness, dismissals for academic reasons do not necessitate a due process hearing. It quoted the Massachusetts Supreme Judicial Court: "We recognize, as did the Massachusetts Supreme Judicial Court over 60 years ago, that a hearing may be 'useless or harmful in finding out the truth as to scholarship.' *Barnard v. Inhabitants of Shelburne*, 216 Mass. 19, at 23, 102 N.E. 1095, at 1097." *Id.* at 90, 98 S.Ct. at 955.

We think that Massachusetts has provided adequate due process protection for civil service promotion applicants by providing for inspection and review of essay examinations and clerical error review of multiple choice tests.

*Affirmed.*