# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| OLGA KARASEV,<br><br>                     Appellant,<br><br>    v.<br><br>CLARK COLLEGE,<br><br>                     Respondent. | No. 56108-5-II<br><br><br>UNPUBLISHED OPINION |

WORSWICK, J. — Olga Karasev was dismissed from the Clark College Nursing Program for failing to meet the Minimum Pass Policy. She appeals Clark College's decision to dismiss her and the trial court's denial of her motion to supplement the agency record. On appeal, she argues that (1) Clark College erred in not applying the procedures outlined in former WAC 132N-125[1] because her dismissal was disciplinary, (2) even if her dismissal was academic, Clark College did not provide her with the proper procedure as required by due process, and (3) the trial court erred in denying her motion to supplement.

We hold that (1) Clark College did not err in not applying the procedures outlined in former WAC 132N-125, (2) Clark College did not violate Karasev's due process rights, and (3) the trial court did not err in denying Karasev's motion to supplement the agency record. We affirm.

---

[1] Former WAC 132N-125 was the student code of conduct in effect at the time Karasev was dismissed from the nursing program. In 2021, former WAC 132N-125 was repealed and replaced with WAC 132N-126. Former Chapter WAC 132N-125 *repealed by* Wash. St. Reg. 97-17-013 (Oct. 24, 2021).

FACTS

I. CLARK COLLEGE EXITS KARASEV FROM THE NURSING PROGRAM

Karasev, a nursing student of Russian heritage, was enrolled in a six-quarter nursing program at Clark College during the 2018-19 academic year. In her first quarter, Karasev used unauthorized materials to perform a clinical task in one of her courses, PSYC 122. Clark College awarded Karasev a failing grade in that course and exited her from the nursing program.[2] Karasev appealed and expressed concerns about discrimination by the course instructor. Clark College conducted an investigation and found that Karasev used unauthorized materials. Clark College offered Karasev two quarters of conditional remediation, which upon completion would have allowed Karasev to petition for readmission into the nursing program.

Karasev appealed and reiterated her discrimination concerns, to which the Associate Dean of Health Services, Jennifer Obbard, responded that under the Clark College's policy, "isolated incidents typically do not qualify as harassment." Clerk's Papers (CP) at 80. And, without evidence, there was no apparent connection between Karasev's dismissal for using unauthorized study aids and the instructor's alleged discrimination.

Karasev eventually accepted Clark College's offer and participated in the remediation program. As part of Karasev's remediation, she signed two documents. First, in the Remediation/Learning Contract, Karasev agreed "to follow the rules and guidelines outlined in the Handbook of Policies and Practices for Nursing Students 2018-2019 and 2019-2020." CP at 79. Second, in a student acknowledgement form, Karasev agreed that she was responsible for

---

[2] The parties refer to this first incident as an "exit," and the second incident explained below as a "dismissal."

adhering to the policies in the Handbook of Policies and Practices for Nursing Students (the Handbook).

Karasev successfully completed her remediation and was granted readmission into the nursing program in April 2020. As part of the Remediation\Learning Contract, Karasev was required to participate in a "Success Plan" upon her readmission. CP at 46. Clark College utilized the success plan because Karasev had demonstrated "unsatisfactory attainment of specific professional, clinical or course objectives." CP at 179. Each success plan is tailored to the student's specific areas of improvement based on feedback the student had received in the past. Karasev's success plan identified that she needed to improve on her professionalism, preparation for learning, skill development, and reflective thinking. She was also required to schedule regular meetings with the Department Chair, Angie Bailey, and Obbard.

Karasev did not seek judicial review of her 2019 exit or otherwise contest the terms of her Remediation\Learning Contract.

II. Clark College Dismisses Karasev From the Nursing Program Without Readmission

In July 2020, Karasev failed to achieve a minimum passing score on PSYC 124 quizzes and was dismissed from the nursing program without an opportunity for readmission. Clark College's reason for dismissing Karasev from the nursing program was that she did not receive the minimum passing score as required by the Minimum Pass Policy & Criteria for Remaining in Program (the Minimum Pass Policy) contained in the Handbook. The Minimum Pass Policy required

[(1)] The student must maintain at least a C grade (75%) in each course. . . .

[(2)] A CUMULATIVE score of 75% must be achieved on all examinations (not including the final exam) PRIOR to the inclusion of written assignments to the final course grade. . . .

[(3)] Students MUST pass the final exam with a 75% or greater. Failure to score a minimum of 75% on the final will result in failing of the course.

CP at 178.

PSYC 124 had three required components for grading: (1) a discussion board, (2) two quizzes, and (3) a reflection paper. Because the Minimum Pass Policy required a minimum cumulative score of 75% on examinations, Karasev needed a cumulative score of 75% or above on the quizzes to satisfy the Minimum Pass Policy. Karasev's cumulative score on the quizzes was 68.89%.[3] Although Karasev's final grade, after accounting for the discussion board and reflection paper, was an 84.44%, this was not sufficient to meet the three requirements of the Minimum Pass Policy. Karasev met two of the three Minimum Pass Policy requirements, but she needed to meet all three requirements to remain in the program.

The Handbook explained that "[i]f a student who fails a nursing course is readmitted and fails any additional nursing course, they will be ineligible for readmission to the Nursing Program." CP at 184.

Karasev appealed her quiz grade by filing a complaint to Clark College. Karasev alleged that she did not have time to complete the quiz, and she raised concerns about the lack of supervision for quizzes and said that other students may have been using unauthorized materials. The instructor reviewed the grade, declined to adjust it, and referred the appeal to the Associate

---

[3] The class average quiz score was a 92%.

4

Dean of Health Sciences. Karasev refused to meet with the Associate Dean to discuss her grades, and the appeal was denied for lack of evidence. The Associate Dean explained:

> The appeal is denied based on lack of evidence that the "grade was assigned as the result of arbitrary or capricious application of otherwise valid standards of academic evaluation or to a student's claim that the instructor has made an arbitrary or capricious decision or taken an arbitrary or capricious action which adversely affects the student's academic standing" (Clark College Grade Change/Academic Appeal Policy).
>
> The exit from the program without the opportunity for readmission stands per the following policies of Clark College Nursing Program Handbook of Polices & Practices for Nursing Students 2019-2020:
>
> - Minimum Pass Policy (p. 34): "A CUMULATIVE score of 75% must be achieved on all examinations (not including the final exam) PRIOR to the inclusion of written assignments to the final course grade". The minimum score for exams/quizzes was not achieved.
>
> - Readmission to Nursing Program (p. 40): "If a student who fails a nursing course is readmitted and fails any additional nursing course, they will be ineligible for readmission to the Nursing Program." Previous exit: June 2018 [sic][4]

CP at 52.

Karasev appealed the decision to the Dean of Business and Health Services. The Dean denied the appeal, explaining that Karasev signed an acknowledgement form attesting that she was responsible for reading the Handbook, and she presented no evidence showing that the grade was arbitrary and capricious. Karasev was dismissed from the nursing program in July.

### III. PROCEDURAL HISTORY

Karasev appealed the Dean of Business and Health Sciences' decision to the superior court and moved to supplement the administrative record with her own declaration and exhibits

---

[4] Although the decision dates Karasev's previous exit in 2018, it occurred in June 2019.

A, B, and C. Karasev's declaration focused on her allegations of discrimination and instances of other students using unauthorized study aids. She also reiterated much of the evidence already contained in the record.

Exhibit A to Karasev's declaration included the occurrence report evidencing her use of unauthorized materials in her PSYC 122 clinical course. Exhibit B included the syllabus for PSYC 122, the clinical course for which Karasev used unauthorized materials. And, exhibit C was an email exchange between Karasev and her PSYC 124 professor, establishing that the Minimum Pass Policy applied to PSYC 124.

Karasev also moved to supplement the record with her attorney's declaration and exhibits A, B, and C. Much of the attorney's declaration, including exhibits A and B, described google search results showing that the PSYC 124 questions and answers are accessible online. Exhibit C included a copy of Clark College's policy and procedure on discrimination and harassment.

The trial court granted Karasev's motion to supplement the record with both exhibits C attached to Karasev's and her attorney's declarations, but denied the motion to supplement in all other regards. The court affirmed Clark College's dismissal of Karasev from the nursing program. Karasev filed a motion for reconsideration, which the trial court denied.

Karasev appeals her dismissal and the trial court's order denying her motion for reconsideration to supplement the administrative record.

## ANALYSIS

### I. DISMISSAL PROCEEDINGS AND DUE PROCESS

The Administrative Procedure Act (APA) governs review of agency action and applies to state colleges as "agencies." RCW 34.05.010(2), (7); *Arishi v. Wash. State Univ.*, 196 Wn. App.

878, 884, 385 P.3d 251 (2016). When reviewing an agency decision, we sit in the same position as the superior court and review the agency's decision in light of the administrative record. *Foster v. Dep't of Ecology*, 184 Wn.2d 465, 471, 362 P.3d 959 (2015). We review only the agency's final decision, not the superior court's ruling. *Marcum v. Dep't of Soc. & Health Servs.*, 172 Wn. App. 546, 559, 290 P.3d 1045 (2012).

We grant relief to a party aggrieved by "other agency action" if the court determines that the action is (i) unconstitutional, (ii) outside the statutory authority of the agency or the authority conferred by a provision of law, (iii) arbitrary or capricious, or (iv) taken by persons who were not properly constituted as agency officials lawfully entitled to take such action. RCW 34.05.570(4).[5] The party asserting the invalidity of the agency's action bears the burden of proof. RCW 34.05.570(1)(a). An agency's decision is arbitrary and capricious if it is willful, unreasoning, and disregards or does not consider the facts and circumstances underlying the decision. *Stewart v. Dep't of Soc. & Health Servs*., 162 Wn. App. 266, 273, 252 P.3d 920 (2011).

A.      *Procedures in Former WAC 132N-125*

Karasev argues that Clark College erred by not complying with the procedures outlined in former WAC 132N-125. We disagree.

---

[5] Karasev argues that the agency action below was an "adjudicative proceeding" subject to the standards of review outlined in RCW 34.05.570(3). Br. of Appellant at 12-16. However, under the APA, an "adjudicative proceeding" means a proceeding before an agency in which an opportunity for hearing before that agency is required by statute or constitutional right before or after the entry of an order by the agency. RCW 34.05.010(1). The APA does not require an adjudicative proceeding for academic decisions regarding academic dismissals. *Cf. Nelson v Spokane Cmty. Coll,*, 14 Wn. App. 2d 40, 46-47, 469 P3d 317 (2020). Because Karasev's academic dismissal was not a result of a decision required to be made in an adjudicative proceeding, and because Clark College issued no order, we do not apply RCW 34.05.570(3)'s standards.

Former WAC 132N-125 provided due process requirements for disciplinary appeals. Former WAC 132N-125-015 (2021). "Disciplinary action" is defined as "the process by which the student conduct officer imposes discipline against a student for a violation of the student conduct code." Former WAC 132N-125-015(13). The student code of conduct prohibits academic dishonesty, such as cheating, plagiarizing, fabricating data, or other acts of dishonesty, disruption, harassment, violence, and the like. *See* Former WAC 132N-125-035. Disciplinary action does not apply to academic underachievement. *See* Former WAC 132N-125-035.

In *Board of Curators v. Horowitz*, 435 U.S. 78, 98 S. Ct. 948, 55 L.Ed.2d 124 (1978), the Supreme Court analyzed the due process required when a graduate student is dismissed from a public university for academic deficiencies. The Court stated, "'[m]isconduct is a very different matter from failure to attain a standard of excellence in studies. A determination as to the fact [at issue] involves investigation of a quite different kind.'" *Horowitz*, 435 U.S. at 87 (quoting *Barnard v. Inhabitants of Shelburne*, 216 Mass. 19, 22-23, 102 N.E. 1095 (1913)). Moreover, academic dismissals require "far less stringent procedural requirements" than cases involving dismissals for misconduct. *Horowitz*, 435 U.S. at 86.

Here, Karasev's dismissal was based on her failure to meet the Minimum Pass Policy in PSYC 124 as outlined in the Handbook. Karasev achieved a cumulative score below the minimum 75% required to pass the class. Although her cumulative class grade was 84.4%, the Handbook required that Karasev pass all examinations with a grade above 75%. It was Karasev's failure to meet the Minimum Pass Policy that resulted in her dismissal, making the dismissal academic, and the provisions of former WAC 132N-125 applied only to disciplinary dismissals. Karasev fails to show she was entitled to the procedures in former WAC 132N-125.

Karasev argues that "[h]ad Clark College truly believed . . . academic performance was sufficient to warrant her dismissal in 2020, it should have dismissed her on that basis alone." Br. of Appellant at 15. The argument fails.

Clark College, in its final decision affirming Karasev's dismissal, explained that Karasev's dismissal was final and without opportunity for readmission. It included the following portion:

> Readmission to Nursing Program (p. 40): "If a student who fails a nursing course is readmitted and fails any additional nursing course, they will be ineligible for readmission to the Nursing Program." Previous exit: June 2018 [sic]

CP at 52. Karasev cites this portion of the decision to support her claim that she was dismissed based on her June 2019 exit, causing her 2020 dismissal to be a dismissal for misconduct, therefore falling under former WAC 132N-125. However, the decision referred to the June 2019 exit to explain the basis for not offering Karasev readmission. Per the readmission policy, a student who fails for the second time, as Karasev did here, is ineligible for admission.

Karasev also argues that she was not afforded proper procedure under former WAC 132N-125 for her 2019 exit. However, that decision is not subject to judicial review. RCW 34.05.542 states that a petition for judicial review of agency action must be filed within 30 days after the agency action. The deadline for Karasev to appeal the 2019 exit was October 24, 2019, which was 30 days after the Associate Dean's letter. Karasev did not seek judicial review of her 2019 exit, and thus, she may not now seek judicial review more than two years after the filing deadline. RCW 34.05.542.

Therefore, Karasev fails to meet her burden to show that Clark College erred in not applying former WAC 132N-125 procedures. In turn, she cannot show that Clark College acted outside its statutory authority, nor that the action was arbitrary and capricious.

2. *Process for Academic Dismissals*

Karasev argues that even if her dismissal was academic, Clark College did not provide her with due process. We disagree.

Fundamentally, due process protects the individual against arbitrary government action such as denying fundamental procedural fairness. *Becker v. Wash. State Univ.*, 165 Wn. App. 235, 255, 266 P.3d 893 (2011). To be entitled to due process protections under the Fourteenth Amendment, Karasev must demonstrate that her dismissal deprived her of either property or liberty. *Horowitz*, 435 U.S. at 83.

There are distinct differences between a school's decisions to dismiss a student for disciplinary versus academic reasons. *Horowitz*, 435 U.S. at 87. In *Horowitz*, The Supreme Court distinguished the amount of procedural safeguarding required when a school makes academic decisions from safeguards required when making decisions about disciplining a student for misconduct. *Horowitz*, 435 U.S. at 86. It reasoned that "far less stringent procedural requirements" are called for in the case of an academic dismissal. *Horowitz*, 435 U.S. at 86. This is because the determination of whether to dismiss a student for academic reasons requires a comprehensive evaluation of cumulative information not readily adapted for the tools of judicial decision making. *Horowitz*, 435 U.S. at 90. Thus, all that is required for an academic dismissal is notice and careful deliberation and evaluation. *Horowitz*, 435 U.S. at 85; *Becker*, 165 Wn. App. at 255.

Even assuming that Karasev can show a deprivation of a property or liberty interest, she fails to show that the procedures leading to her dismissal violated her right to procedural due process. Karasev earned a 68.89% on two of her quizzes, for which the class average was 92%. She submitted a grade dispute after discussing her quiz performance with her professor, who found no reason to change Karasev's grade. Karasev appealed to the Associate Dean but failed to attend the meeting. Karasev submitted documentation explaining her performance, but the Associate Dean denied the appeal. Karasev's appeal was denied again by the Dean because he found that Karasev had notice of the Minimum Pass Policy, performed below the class average, and provided no evidence of her allegations that other students had been cheating.[6]

Moreover, Karasev had notice. Karasev was aware of the school's policy regarding the Minimum Pass Policy contained in the Handbook, which she acknowledged that she would read and understand. The Minimum Pass Policy was also reiterated in the PSYC 124 syllabus, stating that students were required to pass each exam with a score of 75% or higher to pass the class. Karasev was also aware of the school's readmission policy which stated that "[i]f a student who fails a nursing course is readmitted and fails any additional nursing course, they will be ineligible for readmission to the Nursing Program." CP at 184. Not only was Karasev aware of the school's Minimum Pass Policy and readmission policy, but she was also aware that she had a total of two quizzes in PSYC 124. After earning a grade of 68.89% on the first quiz, Karasev

---

[6] In her grade appeal, Karasev stated, "The quizzes are humanly impossible to pass given the short-limited time frame and nature of questions if only using the textbook (the only resource allowed). Students who pass use Google's search engine or work on them together leaving no fair chance to students who are honest and use only allowed resources." CP at 59. She is essentially arguing, without evidence, that the only way to pass the quizzes was to cheat.

was put on notice that she was required to earn a grade high enough to meet the minimum cumulative grade requirement.

Lastly, Karasev was also placed on a success plan after her readmission, which is a tool utilized by instructors "when a student demonstrates unsatisfactory attainment of specific professional, clinical or course objectives." CP at 179. Karasev's success plan identified that Karasev needed to improve on her preparation for learning, skill development, and reflective thinking. The success plan was tailored to Karasev based on feedback she had received in the past. Thus, Karasev was notified through feedback in the past and through the success plan that she had not been meeting expectations in her academic performance.

Karasev was also afforded a three-step grade appeal process, for which she was able to explain her performance. She failed to meet with the Associate Dean despite many opportunities and invitations to do so. Her grades fell well below the average required passing score. Thus, Clark College's decision was careful and deliberate, with ample evidence supporting Karasev's dismissal.

Because Karasev fails to show that her due process rights were violated, Clark College's decision was not unconstitutional.

Karasev cites to four cases to support her argument that Clark College did not afford her the required notice for academic dismissal: (1) *Board of Curators v. Horowitz*, 435 U.S. 78, 98 S.Ct. 948, 55 L.Ed.2d 124 (1978); (2) *Regents of University of Michigan v. Ewing*, 474 U.S. 214, 225, 106 S. Ct. 507 88 L. Ed. 2d 523 (1985); (3) *Becker v. Washington State University*, 165 Wn. App. 235, 255, 266 P.3d 893 (2011); and (4) *Arishi v. Washington State University*, 196 Wn. App. 878, 897, 385 P.3d 251 (2016).

In *Horowitz*, a medical school student was dismissed during her final year for failure to meet academic standards. *Horowitz*, 435 U.S. at 79. The school expressed concern over the student's performance after the first year but agreed to advance her to the second and final year on a probationary basis. *Horowitz*, 435 U.S. at 81. During her second year, faculty continued to be dissatisfied and rated her performance as "unsatisfactory." *Horowitz*, 435 U.S. at 81. The school then recommended her dismissal from the program. *Horowitz*, 435 U.S. at 81. The student appealed and took oral and practical exams as part of the appeal process. *Horowitz*, 435 U.S. at 81. After receiving recommendations from other physicians and reports of her negative rotation reports, the school dismissed Horowitz. *Horowitz*, 435 U.S. at 81. Horowitz appealed, and the school affirmed its decision after reviewing the record. *Horowitz*, 435 U.S. at 81. The Supreme Court affirmed the dismissal, holding that Horowitz was afforded her procedural due process rights. *Horowitz*, 435 U.S. at 92.

Although the facts in *Horowitz* differ regarding the number of times the student was notified that her performance was unsatisfactory, *Horowitz* does not mandate that a student be repeatedly told she is failing. As stated above, Karasev was provided the Handbook and all applicable policies, and she was informed that she had to obtain over 75% on her quizzes.

In *Regents*, a student was dismissed after failing one examination required to complete the final two years of the program. *Regents*, 474 U.S. at 214. After considering the student's record, the school voted unanimously to dismiss the student from the program. *Regents*, 474 U.S. at 216. The Supreme Court ultimately affirmed the dismissal, holding that the student was afforded proper procedure because the decision of his dismissal "rested on an academic

13

judgment . . . viewed against the background of his entire career . . . including his singularly low score on the [exam]." *Regents*, 474 U.S. at 227-28.

Karasev highlights the language in *Regents* where the Supreme Court stated that there was no evidence that the university's decision was based in bad faith, and argues that here, there had to have been an "ulterior motive" for her dismissal, namely the 2019 exiting action. Br. of Appellant at 24-25. But, as stated above, the 2019 exit was never appealed, and Karasev fails to show any bad faith on the part of Clark College.

In *Becker*, a student enrolled in a doctorate program was dismissed because she ignored deadlines, received negative evaluations about her professionalism and performance, and received written warnings of dismissals. *Becker*, 165 Wn. App. at 256. We noted that Becker had received written reviews and warnings prior to her dismissal, and we held that she had notice of the dismissal and could not show a due process violation. *Becker*, 165 Wn. App. at 256. But *Becker* does not stand for the proposition that a student must be given multiple written reviews and warnings to comply with due process notice.

Finally, in *Arishi*, a student enrolled in a doctorate program was dismissed after being arrested for having sexual contact with a minor. *Arishi*, 196 Wn. App. at 891. After learning of the arrest, the school dismissed the student for violating multiple standards contained in the code of student conduct. *Arishi*, 196 Wn. App. at 891. The school offered Arishi an informal hearing that did not afford him an opportunity to introduce witnesses or documents. *Arishi*, 196 Wn. App. at 892. We held that the school violated Arishi's due process right by not giving him an opportunity to participate in a full adjudication. *Arishi*, 196 Wn. App. at 901. But *Arishi* is

inapplicable here because it concerns a disciplinary dismissal rather than an academic dismissal. *Arishi*, 196 Wn. App. at 891.

Because Karasev fails to show that Clark College violated her right to due process, her dismissal was not unconstitutional.

## II. MOTION TO SUPPLEMENT

Karasev argues that the trial court erred in denying her motion to supplement the agency record. We disagree.

Courts may supplement the agency record with additional evidence if such evidence relates to the validity of the agency action at the time it was taken and disputed issues regarding the unlawfulness of procedure or of decision-making process. RCW 34.05.562(1), (1)(b). We do not admit new evidence that merely reiterates evidence already contained in the record. *Hunter v. Univ. of Wash.*, 101 Wn. App. 283, 287 n.1, 2 P.3d 1022 (2000).

We review a trial court's decision to deny a motion to supplement for abuse of discretion. *Ctr. for Biological Diversity v. Dep't of Fish and Wildlife*, 14 Wn. App. 2d 945, 964, 474 P.3d 1107 (2020). An abuse of discretion occurs when a "decision is manifestly unreasonable or exercised on untenable grounds or for untenable reasons." *McCoy v. Kent Nursery, Inc.*, 163 Wn. App. 744, 758, 260 P.3d 967 (2011). The trial court's decision is manifestly unreasonable if it adopts a view that no reasonable person would take. *Mayer v. Sto Indus., Inc.*, 156 Wn.2d 677, 684, 132 P.3d 115 (2006). If the trial court's decision "relies on unsupported facts or applies the wrong legal standard," the decision is based on untenable grounds or untenable reasons. *Mayer*, 156 Wn.2d at 684.

The trial court excluded Karasev's declaration and exhibits A and B, and the declaration of her attorney and exhibits A and B. Both declarations and excluded exhibits introduced evidence of Karasev's exit in 2019, which is not the subject of litigation here. As discussed, Karasev did not seek judicial review of her 2019 exit, and thus, she may not now seek judicial review more than two years after the filing deadline. RCW 34.05.542.[7] Because the evidence Karasev sought to introduce does not relate to the present dispute, nor does it go to the validity of the agency's decision to dismiss Karasev for academic reasons, the trial court did not abuse its discretion in denying Karasev's motion.

Thus, the trial court did not abuse its discretion is denying Karasev's motion to supplement the agency record.

CONCLUSION

Karasev fails to meet her burden of showing that Clark College's decision to dismiss her was invalid. Clark College did not err in not implementing the procedures in former WAC 132N-125 because Karasev's dismissal was academic. And, Clark College did not violate Karasev's due process right when it dismissed her. As such, Karasev failed to show that Clark College acted outside of its statutory authority, made an unconstitutional decision, or acted arbitrarily and capriciously.

---

[7] In Karasev's motion before the trial court, she argued that the trial court should allow her to supplement the record with exhibit B attached to her attorney's declaration because it evidences that Clark College used external exams in violation of WAC 246-840-527(7), which provides that "[n]ursing programs shall not use external nursing examinations as the sole basis for program progression or graduation." CP at 249. However, this issue is not argued on appeal and is deemed waived. *Hall v. Feigenbaum*, 178 Wn. App. 811, 817, 319 P.3d 61 (2014).

No. 56108-5-II

In addition, the trial court did not err by denying Karasev's motion to supplement the agency record. We affirm the dismissal and the trial court's decision on the motion to supplement the agency record.[8]

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Worswick, J.

We concur:

Glasgow, C.J.

Price, J.

---

[8] Karasev requests attorney fees under RCW 4.48.350, which states that a court shall award the prevailing party fees and other expenses, including reasonable attorney's fees. Because Karasev does not prevail on appeal, we decline her request for attorney fees.